■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MICHAEL WEIL and MICHAEL DUARTE, Appellants.— Appeal from (1) two judgments of the Supreme Court, Kings County, one rendered August 1, 1968, convicting appellant Duarte of violation of section 220.05 of the Penal Law, a misdemeanor, and the other rendered March 14, 1969 upon resentence, convicting appellant Weil of violation of section 220.15 of the Penal Law, a felony, upon guilty pleas, and (2) two orders of said court, both dated April 20, 1968, which denied

separate motions by appellants to suppress evidence, after a joint hearing. Judgments and orders affirmed. No opinion. Rabin, Hopkins, Munder and Latham, JJ., concur; Christ, Acting P. J., dissents and votes to reverse the judgments and orders, to grant the motions to suppress evidence, and to dismiss the indictments, with the following memorandum: In my opinion, the arrests in this case were not based on probable cause and the evidence procured by the incidental searches which followed should have been suppressed. On November 15, 1967, Detective Crocilla of the Narcotics Bureau of the New York City Police Department was advised that the Bureau had received a telephone message for Crocilla from someone identifying himself as "Rosie". Crocilla recognized this as the code name for an informer he had used some seven years theretofore in connection with four narcotics arrests and conviction. Crocilla had not had any contact with "Rosie" since June, 1961. The substance of the message was that two male occupants of Room 218 at the Hotel Margaret, 97 Columbia Heights, Brooklyn, had marijuana; that both men were about 5 feet 9 inches in height; that one was white, the other apparently Puerto Rican; that one had a mustache; and that these men were going to buy hashish in New York and return to California with it. Crocilla went to the Hotel Margaret and spoke with the hotel clerk. He asked if there was anyone in Room 218 from California and the clerk, after checking his cards, said both Room 206 and Room 218 had California residents. Crocilla gave the clerk the description provided by the informer and the clerk said it matched the two men, both of whom had come from California a few days before. At Crocilla's request, the clerk telephoned Room 218 but received no answer. Crocilla waited in the lobby and, a few hours later, heard the desk clerk speaking quite loudly to a man standing by the desk. When the man walked away, the clerk motioned to Crocilla that this was one of the men he had inquired about. Crocilla followed defendant Weil up the stairs to the second floor and, at the head of the stairs, identified himself to Weil. Weil jumped back a short distance and hollered something. Crocilla grabbed him, took a package from under Weil's arm, opened it and found hashish. Weil was placed under arrest and Crocilla took him to Room 206. Crocilla searched Room 206, and, shortly after, heard a knock on the room door. He opened the door and saw defendant Duarte standing there. Crocilla told Duarte that Weil was busy and that Duarte should call back later. After a few seconds, Crocilla realized that Duarte might be the other man mentioned by the informer and followed Duarte down the hall. Crocilla stopped Duarte and, upon learning from Duarte that his room was 218, arrested him. Room 218 was then searched and marijuana was found in a closet. The critical question, of course, is whether Detective Crocilla had probable cause to arrest Weil when he took the package from him at the head of the stairs. Beyond dispute, the information supplied by the informer is essential to provide probable cause. Without it, there is nothing more than Crocilla's observations of Weil standing at the hotel desk, walking up the stairs and being startled when Crocilla called out to him. Duarte did no more than knock on Weil's door and say he lived in Room 218. A police officer is entitled to rely upon hearsay information obtained from an informer if the two-pronged test announced in *Aguilar* v. *Texas* (378 U. S. 108) and reaffirmed in *Spinelli* v. *United States* (393 U. S. 410) is satisfied (*People* v. *Hendricks*, 25 N Y 2d 129, 133). In substance, the officer must have reason to believe that (1) the informer is generally reliable and (2) the manner in which the informer came by his information demonstrates sufficient probability that it is true. Without such support, the informer's tip is entitled to no weight in determining probable cause (*People* v. *Corrado*, 22 N Y 2d 308, 313). The first prong of this test was satisfied in the instant

case by Crocilla's testimony that the informer was known to him and, in the past, had furnished information leading to the arrest and conviction of others (*People* v. *Cerrato,* 24 N Y 2d 1, 5; *People* v. *Montague,* 19 N Y 2d 121, 122, cert. den. 389 U. S. 862; *People* v. *Rogers,* 15 N Y 2d 422), although I find the sudden, unmotivated reappearance of an informer Crocilla had not heard from for seven years to be rather unusual. The second prong of the test — reliability of the information provided by the informer — may·be satisfied through independent verification by the police officer (*People* v. *Hendricks,* 25 N Y 2d. 129, 134, *supra*; *People* v. *Cerrato, supra,* p. 5; *People* v. *Schnitzler,* 18 N Y 2d 457) or by the fact that the information is so precise in detail as to ·be set apart from the category of rumor (*Draper* v. *United States,* 358 U. S. 307) or because it is clear from the information that the informer was speaking from first-hand knowledge (*McCray* v. *Illinois,* 386 U. S. 300; *People* v. *Munger,* 24 N Y 2d 445, 451). There is nothing in this record to indicate that the informer spoke from first-hand knowledge. The record is barren of any indication as to how or why he concluded that the marijuana was where he claimed it was. Crocilla's prearrest observations at the Hotel Margaret, in themselves, uncovered nothing criminal. There is nothing unusual about two men from California occupying rooms in a Brooklyn hotel. Those observations, however, did verify some of the information furnished by the informer. The question is whether the informer's tip, supplemented by Crocilla's observations, provided probable cause. As the multiple opinions in *Spinelli* v. *United States* (393 U. S. 410, *supra*) make clear, to state the relevant principles is a good deal less troublesome than to apply them. In *Spinelli,* the F. B. I. had information from an informer that Spinelli was taking bets by means of two specifically designated telephone numbers. F. B. I. investigation established that Spinelli was a known bookmaker; that the telephone numbers provided by the informer were located in a certain apartment; and that Spinelli used that apartment and frequented it on a regular basis. The Supreme Court held there was no probable cause for issuance of a search warrant. The informer's tip, standing alone, was not enough, because there was no indication of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. Nor was the informer's information so precisely detailed that a Magistrate could reasonably infer he was relying on something more than mere rumor. Nor did the informer's information, supplemented by the F. B. I.'s independent investigation, add up to probable cause, since "the allegations detailing the FBI's surveillance of Spinelli and its investigation of the telephone company records contain no suggestion of criminal conduct when taken by themselves — and they are not endowed with an aura of suspicion by virtue of the informer's tip " (*Spinelli* v. *United States, supra,* p. 418). The People rely primarily upon *Draper* v. *United States* (358 U. S. 307, *supra*) to sustain the arrests in the instant case. As noted in *Spinelli,* however, *Draper* was a case where the informer's information was so detailed as to verify itself. " A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way " (*Spinelli* v. *United States, supra,* p. 417). That cannot be said of the information provided in the instant case. In *People* v. *Horowitz* (21 N Y 2d 55), which I consider to be a far stronger case for the application of *Draper,* the Court of Appeals held there was no probable cause, even though the police personally verified every bit of the informer's information and there was a far better description of the defendant than we have in this· case. As in *Spinelli* and *Horowitz,* all that the officer verified in the instant case was that the suspects were present at the place where the illegal activity was allegedly taking place. That is not

enough. The vagueness of the description furnished by "Rosie" is amply demonstrated by the fact that Detective Crocilla would not have recognized Weil without the hotel clerk's motioning, and actually let Duarte walk away from Weil's room until he suddenly realized that Duarte "might" be the other man. I would reverse and dismiss the indictments (*Spinelli* v. *United States,* 393 U. S. 410, *supra*; *Aguilar* v. *Texas,* 378 U. S. 108, *supra*; *Giordenello* v. *United States,* 357 U. S. 480; *People* v. *Hendricks,* 25 N Y 2d 129, *supra*; *People* v. *Corrado,* 22 N Y 2d 308, 313, *supra*; *People* v. *Horowitz,* 21 N Y 2d 55, 58, *supra*).