MR. JUSTICE SHEA,
dissenting:
In addition to reversing the arson conviction, I would also reverse the homicide convictions.
None of the charges in this case can withstand the scrutiny as to whether probable cause existed for the original arrest as is compelled by Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Nor can the convictions withstand the scrutiny of our own statutes relating to the requirement of probable cause.
In the context of this case, I would not reverse for the sole reason of not allowing the defense to inquire into the jurors’ attitudes on capital punishment; nevertheless, I believe the District Court also erred in not allowing this inquiry, even though punishment is ultimately a function of the court. I believe the widest possible latitude on voir dire should be allowed the defense and prosecution in a criminal case. Voir dire examination is one of the most important (and most neglected) parts of the entire trial. In the interests of fairness it ought not be unduly restricted.
*505 The question of whether there was probable cause for the filing of the information and, consequently, for the issuánce of the arrest warrant, must be put in its proper perspective. This is not a situation where we are asked to review the sufficiency of the evidence to sustain the ultimate convictions obtained in this case. Rather, we are asked to determine if probable cause existed for the original filing of the charges and the issuance of the warrant of arrest. That inquiry must be confined solely to the application for leave to file the information (for no other evidence was offered at that time), and the answer must be a resounding “no”.
To buttress the total lack of factual statements in the application, the majority relies on a hearing held after the defendant was arrested. However, even this hearing did not include the taking of evidence. It was confined to briefs and oral arguments on the question of whether probable cause existed to arrest the defendant. Apparently, this hearing was held in order to comply with the requirements of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). It must again be emphasized that the hearing was held after the arrest and that no additional evidence was received.
We have, accordingly, a situation where the county prosecutor elected to rely on the sufficiency of his application for leave to file the information to justify the issuance of the arrest warrant. Where he fails in that regard, it is not our duty to bail him out simply because the ultimate convictions were supported by sufficient evidence. There was no law that required the prosecutor to stand on the sufficiency of the application for leave to file the information. He could have decided that the previous application was inadequate, dismissed the charge, and then immediately filed an application containing sufficient factual statements to justify a finding of probable cause. Having elected to stand on his original application, the prosecutor must have known that any ultimate convictions must withstand judicial scrutiny of whether probable cause was stated to justify the arrest and subsequent criminal proceedings. Needless to say, any evidence brought forth at pretrial hearings or the actual trial cannot relate back to the original filing to save a conviction.
*506 The majority relies on four statements contained in the application for leave to file the information, but recognizes that only second and third statements are applicable to a determination of the existence of probable cause. The majority summarizes the application as follows:
“The facts alleged by the county attorney in the affidavit are:
“(1) Defendant caused the death of three persons by setting fire to the apartment building;
“(2) Defendant admitted setting the fire by igniting flammable materials near the entrance;
“(3) The Great Falls Fire department determined that the fire was intentionally set; and
“(4) The state believes it can prove the defendant guilty of the offenses charged.”
As to probable cause contained in these statements the majority concluded:
“We hold that the fact the affidavit revealed an admission to setting the fire (2) was sufficient along with (3), an indication that the fire was intentionally set to warrant the action of the trial court. Particularly in view of the fact a separate hearing was held after the issuance of leave to file the Information and warrant of arrest. This information was clearly sufficient to establish probable cause.”
Contrary to these conclusions, I believe that the application is totally devoid of probable cause. By not addressing points (1) and (4), the majority tacitly agrees that they add nothing to establish probable cause. And surely they are correct in this analysis. The statement in (1) that defendant caused the death of three persons is a bald conclusion. Moreover, it does not indicate whether the deaths were intentionally caused or could have been accidentally caused. Likewise, the statement in (4) that the state believed it could prove the defendant guilty of the offense charged is a conclusion, adding nothing to the requirements of probable cause.
The statement in (2) that defendant admitted setting the fire by igniting flammable materials adds nothing to the requirement that *507 the fire be deliberately set as opposed to accidentally set. And neither do we have any idea of the circumstances and context in which defendant allegedly made this statement. To whom did he make this statement? Was it a child, a policeman, a relative, a friend, an eavesdropper? Was the person reliable? The record is silent on these questions.
The statement in (3) that the Great Falls fire department determined that the fire was intentionally set is also a mere conclusion. When did the fire department determine this? How was it determined? What was the basis for making this determination? Who made this determination? Was there independent evidence linking defendant to the scene of the crime or with any of the occupants who were killed in the fire? On these matters, the application is also silent.
The law requires, as the majority agrees, that there be factual statements contained in the moving papers so that the District Court can make an independent determination that probable cause does exist. Here, the District Court had nothing but bald conclusions. The majority interprets Aguilar, supra, to require that “the existence of probable cause must be determined by the independent judgment of a detached magistrate”. Here, there were no facts upon which the District Court could have made an independent judgment. Moreover, the application flies in the fact of section 95-1301, which the majority purports to follow. The majority quotes with approval the following language from the Revised Commission Comment to section 95-1301, but then totally ignores its application:
“* * * Obtaining leave to file an information is not a mere perfunctory matter, but rests in the sound discretion of the district judge. The application must be complete in itself, and contain such salient facts as will allow the district judge to make an independent determination that an offense has been committed. * * *” (Emphasis added.)
I cannot imagine a more incomplete application than was filed in this case, nor a more perfunctory treatment by the prosecutor *508 and District Court. The application contained no facts, let alone salient facts, and for this reason the District Court was in no position to make any independent judgment that an offense had been committed. There was no room for the District Court to exercise its discretion. Leave to file should have been denied as a matter of law. If the District Court performed its duties, and the prosecutor his, it would have been a simple matter for the prosecutor to refile and the District Court to approve a legally sufficient application. As matters now stand, these convictions cannot withstand an attack on the original probable cause required before the issuance of a warrant of arrest. The convictions should be reversed.